16-828-cv
*Penree v. Watson, et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "Summary Order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of May, two thousand seventeen.

Present:
      AMALYA L. KEARSE,
      PETER W. HALL,
      DENNY CHIN,
          *Circuit Judges.*

---

DANIEL PENREE, and D.-M.W., a minor child, by Daniel Penree, his father,

       *Plaintiffs-Appellees,*

    v.                            16-828-cv

CITY OF UTICA, NEW YORK, CITY OF UTICA POLICE DEPARTMENT CHIEF OF POLICE, MARK WILLIAMS, JOHN DOES, whose identities are yet to be ascertained, and who are members of the City of Utica Police Department as Officers,

       *Defendants,*

CITY OF UTICA POLICE SERGEANT WATSON, CITY OF UTICA POLICE OFFICER CICCONE, CITY OF UTICA POLICE OFFICER SKABINISKI,

---

1

16-828-cv
*Penree v. Watson, et al.*

| For Appellants: | NORMAN P. DEEP, Clinton, New York, and A.J. BOSMAN, Rome, New York. |
| For Appellees: | ZACHARY C. OREN, Assistant Corporation Counsel, Utica, New York. |

Appeal from an order of the United States District Court for the Northern District of New York (D'Agostino, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the appeal is **DISMISSED** in part, and the order of the district court is **AFFIRMED** in part.

Defendants-Appellants Utica police officers ("Defendants") appeal the denial of their motion for summary judgment, in which they argued that they are entitled to qualified immunity. We assume the parties' familiarity with the underlying facts, the procedural history, the district court's rulings, and the arguments presented on appeal.

"[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *see also Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996). In considering an appeal from such a decision, we review *de novo* the district court's

---

* The Clerk is respectfully directed to amend the official caption to conform with the above.

denial of summary judgment based on a defense of qualified immunity. *Papineau v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006).

We evaluate claims of qualified immunity at summary judgment using a two-part inquiry: (1) "whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right" and (2) "whether the right in question was clearly established at the time of the violation." *Tolan v. Cotton*, 134 S. Ct. 1861, 1865–66 (2014) (internal alterations and quotations omitted). Courts have discretion in deciding the order in which to analyze the two prongs, but under either, they may not resolve genuine issues of material fact. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); Fed. R. Civ. P. 56(a).

For purposes of deciding whether a defendant is entitled to qualified immunity, courts should not define "clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *al-Kidd*, 563 U.S. at 742). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (internal quotation omitted). Plaintiffs need not provide a case directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. Indeed, "qualified immunity protects all

but the plainly incompetent or those who knowingly violate the law." *Mullenix*, 136 S. Ct. at 308 (internal quotation omitted).

We consider each of the Defendants' assertions of qualified immunity in turn.

## I.    False Arrest

The district court denied summary judgment on the basis of Defendants' assertion of qualified immunity for the false arrest claim on factual grounds, concluding that "there are questions of material fact that must be resolved by a jury." Spec. App'x at 59. A "portion of a district court's summary judgment order that, though entered in a 'qualified immunity' case, determines only a question of 'evidence sufficiency,' *i.e.,* which facts a party may, or may not, be able to prove at trial," is not immediately appealable. *Johnson v. Jones*, 515 U.S. 304, 313 (1995).

We lack jurisdiction to review Defendants' challenge on this claim and, therefore, dismiss this portion of the appeal.

## II.    Unlawful Search

Warrantless entry into a home is presumptively unreasonable under the Fourth Amendment. *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984); *Payton v. New York*, 445 U.S. 573, 586 (1980). Indeed, the law is well settled that absent exigent circumstances, warrantless entry into a home is unconstitutional "even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within." *Payton*, 445 U.S. at 588.

Defendants' primary challenge to the denial of qualified immunity on this claim is rooted in the "clearly established" prong. They argue that the law is not

clearly established because an alleged domestic abuser's Fourth Amendment rights conflict with the rights of domestic violence victims after this Court's decision in *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 437 (2d Cir. 2009). We disagree.

An affirmative duty on the part of officers to intervene when faced with alleged domestic violence does not conflict with the duty not to enter the attacker's home without a warrant. It is possible—indeed, an officer is, absent exigent circumstances, required—to secure the substantive due process rights of domestic violence victims through legal means such as by obtaining consent or a warrant to enter a home. The law prohibiting warrantless entry into a home without exigent circumstances was and continues to be clearly established, and is not undercut by our decision in *Okin*.

There remains the issue of exigent circumstances. "[A]pplication of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned." *Stanton v. Sims*, 134 S. Ct. 3, 6 (2013) (internal quotation omitted). Defendants contend that any of the following exigent circumstances apply to justify their warrantless entry: hot pursuit, emergency aid, and the fleeing suspect doctrine. Again, we disagree.

First, entry into the house was not appropriate under the "hot pursuit" facet of the exigent circumstances exception, *see, e.g.*, *United States v. Santana*, 427 U.S. 38, 42–43 (1976), because Penree was not fleeing anywhere—he had not been pursued, and he was in his home before the officers arrived at his house. The fact

that Penree subsequently fled upstairs from the officers who entered his home without any authorization could not justify their unlawful entry. Second, the emergency aid doctrine does not apply because there was no emergency. According to the police report, the mother of Penree's children was standing out in front of the house when the officers arrived, and Penree brought the children out to his porch so that the officers could see that the children were not in danger or in need of aid. As the district court noted, "[d]efendant Skibinski testified that he did not act when the children were outside on the porch of the house because he did not have any reasonable basis to do so." Spec. App'x at 5; *see also id.* at 6 ("Defendant Skibinski informed Defendant Watson that he had seen the children and that they looked 'ok.'"). Third, Penree was not fleeing by lawfully remaining in his home. A possible exit through the back door does not a fleeing suspect make.

Absent exigent circumstances, there was no basis for the warrantless entry into Penree's home. Defendants are not entitled to summary judgment on the basis of qualified immunity on this claim.

### III.  Excessive Force

The district court appears to have denied qualified immunity on Penree's excessive force claim on factual grounds. *See* Spec. App'x at 57 (noting that genuine issues of fact remain "whether it would have been clear to a reasonable officer that his conduct was unlawful in this situation").

The Supreme Court, however, made clear in *Saucier v. Katz*, 533 U.S. 194, 197 (2001), that a ruling as to qualified immunity "requires an analysis not

susceptible of fusion with the question whether unreasonable force was used in making the arrest." Thus, "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation," *Graham v. Connor*, 490 U.S. 386, 397 (1989), is distinct from whether the officers hold a "mistaken understanding as to whether a particular amount of force is legal in th[e] circumstances," *Saucier*, 553 U.S. at 205. On that basis, we undertake the analysis of whether qualified immunity bars Plaintiffs' pursuit of this claim.

Our precedents suggest that it is *not* excessive force to deploy tasers, after a warning, against arrestees who are dangerous or resisting arrest. *See MacLeod v. Town of Brattleboro*, 548 F. App'x 6, 7–8 (2d Cir. 2013) (summary order); *Crowell v. Kirkpatrick*, 400 F. App'x 592, 595–96 (2d Cir. 2010) (summary order). Plaintiffs, however, "need not show a case directly on point." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (internal quotation omitted). And the overall test for excessive force is clear: "plaintiffs must establish that the government interests at stake were outweighed by 'the nature and quality of the intrusion on plaintiffs' Fourth Amendment interests.'" *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (Sotomayor, *J.*) (quoting *Graham*, 490 U.S. at 396).

Here, there was no countervailing government interest at all. The officers were in Penree's home unlawfully, he was not fleeing or resisting, the officers purportedly arrested him for a noncriminal offense, they saw he was holding his small child, and they gave no warning (in fact, the record indicates that they

7

concocted the plan to taser Penree before entering the house). Therefore, we have little trouble concluding on the facts in the record viewed in the light most favorable to Plaintiffs that Defendants violated clearly established law prohibiting the use of tasers, without warning, against nonviolent, non-fleeing, non-resisting arrestees who have committed no criminal offenses, and they are not entitled to qualified immunity.

## IV.    Malicious Prosecution

As to the malicious prosecution claims, we agree with the district court's conclusion, in light of the record as discussed in Part II above, that "[c]onstruing the evidence in favor of Plaintiffs, no reasonably competent officer could agree that there was probable cause to successfully prosecute" Penree for any offense. Spec. App'x at 60. "Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003).

First, under New York law, the officers' arrest of Penree for second-degree harassment of his children's mother was unlawful because that offense is defined as a "violation," N.Y. Penal Law § 240.26, which is not within the definition of a "crime," *see id.* § 10.00(1)–(6); and under New York law, an officer is not authorized to arrest a person for an offense that is not a crime unless the offense was committed in his or her presence, *see* N.Y. Crim. Pro. Law § 140.10(1). Second, there was no reason to believe that resisting an unlawful entry into one's home

8

constitutes harassment of police officers. Third, no officer could reasonably conclude that holding the door closed in response to an unlawful entry amounts to resisting arrest. In fact, resisting unlawful arrests is not unlawful under New York law. *See* N.Y. Penal Law § 205.30. Finally, holding one's child and running upstairs away from police officers who are unlawfully in one's home cannot constitute child endangerment. Because with the record viewed in the light most favorable to Plaintiffs no reasonable officer could conclude otherwise, it was appropriate to deny the Defendants summary judgment based on their defense of qualified immunity with respect to the malicious prosecution claims.

## V.    Substantive Due Process

The district court also denied Defendants' motion for summary judgment based on their assertion of qualified immunity with respect to D-M.W.'s substantive due process claim based on its rejection of Defendants' *Okin* argument described above. As noted, that argument provides no basis for a grant of qualified immunity.

We have considered Defendants' remaining arguments and find them to be without merit.

Accordingly, this appeal is **DISMISSED** in part, and the order of the district court is **AFFIRMED** in part.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk